# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.I.C. INTERNATIONAL INC., a California corporation d/b/a H2Odyssey and LI CHUNG PLASTICS INDUSTRY CO., a Taiwan corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MIFLEX 2 SPA, an Italy corporation and MAURO MAZZO, an individual,<br><br>Defendants. | Case No.: 3:17-cv-0556-CAB-WVG<br><br>**ORDER ON DEFENDANT MIFLEX 2 S.P.A'S MOTION TO DISMISS**<br>**[Doc. No. 12.]** |

This matter comes before the Court on Defendant Miflex 2 S.p.A's ("MiFlex") motion to dismiss [Doc. No. 12]. The motion has been fully briefed, and the Court finds it suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the following reasons, Defendant's motion is granted.

### I. BACKGROUND

On March 21, 2017, Plaintiffs P.I.C. International Inc. d/b/a H2Odyssey ("H2Odyssey") and Li Chung Plastics Industry ("Li Chung") (collectively "Plaintiffs") filed suit for non-infringement of United States patent no. 8,381,772 ("the '772 patent"). [Doc. No. 1.] The '722 patent relates to low-pressure hoses that connect to diving

cylinders. [*Id.*] Plaintiffs request declaratory judgment seeking a declaration that their products do not infringe on Defendants' '722 patent. [*Id.*] H2Odyssey is a California corporation with its principle place of business in Vista, California. [*Id.* at ¶ 2.] Plaintiff Li Chung is a Taiwanese corporation with its principle place of business in Taichung City, Taiwan. [*Id.* at ¶ 3.] Defendant MiFlex is an Italian corporation with its principle place of business in Villasanta, Italy. [*Id.* at ¶ 4.] Several distributors of MiFlex hoses are purportedly located in this District, including Aqua-Lung America that operates in Vista, California. [*Id.*] Defendant Mauro Mazzo ("Mazzo'), the inventor of the '722, is an Italian citizen who resides in Casatenovo, Italy and is the President and Chief Executive Officer of MiFlex. [*Id.* at ¶ 5.] Plaintiffs assert that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and 2201(a). [*Id.* at ¶ 7.]

Plaintiffs allege that this Court has personal jurisdiction over Defendants because: (1) Defendants are continuously, systematically and substantially present in this District; (2) Defendants regularly conduct and/or solicit business within this District; (3) Defendants have purposefully directed activities at residents of this District, including H2Odyssey; and (4) Defendants have expressly solicited H2Odyssey in this District to cease and desist making the scuba hoses at issue. [*Id.* at ¶ 8.]

Further, Plaintiffs assert that Defendants have accused Plaintiffs and a least one of their customers of making and selling scuba hoses that infringe the '772 patent and have alleged threatened to take legal action to stop the patent infringement. [*Id.* at ¶ 1.] In addition, Plaintiffs allege "Defendants' accusations and threats have cast uncertainty over the commercialization of Plaintiffs' scuba hoses; endangered Plaintiffs' business and relationships with their customers, distributors, and partners, as well as Plaintiffs' rights to sell scuba hoses; and created a justiciable controversy." [*Id.*]

On May 26, 2017, Defendant MiFlex filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). [Doc. No. 12.] On June 16, 2017, Plaintiffs filed their opposition to the motion to dismiss [Doc. No. 13] and Defendant Miflex filed its reply [Doc. No. 14].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. Since this is a non-infringement of patent case, Federal Circuit law regarding personal jurisdiction governs. *See Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) ("The law of the Federal Circuit, rather than that of the regional circuit in which the case arose, applies to determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state infringer.")

Under Federal Circuit law, personal jurisdiction over a non-resident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Nuance Comms,* 626 F.3d at 1230. "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)). Thus, "the jurisdictional analyses under state law and federal due process are the same.'" *Nuance Comms*, 626 F.3d at 1230 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). This minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Id.* at 2851 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)). However, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Avocent Huntsville Corp. v. Aten*

*Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting *Hanson v. Deckla*, 357 U.S. 253 (1958)).

Here, because the motion to dismiss for lack of jurisdiction is based on affidavits and documentary evidence, Plaintiffs are required to make a prima facie showing that MiFlex is subject to personal jurisdiction in California. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *Autogenomics, Inc. v. Oxford Gene Tech.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009); *Elecs for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The uncontroverted allegations in the complaint must be taken as true and factual conflicts must be resolved in Plaintiffs' favor. *Elecs. For Imaging,* 340 F.3d at 1349. In order to survive the motion to dismiss, Plaintiffs must show that MiFlex has minimum contacts with the forum state as will "potentially allow exercise of personal jurisdiction" over it. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2011). But, "bare formulaic accusations" that a defendant maintains sufficient contacts with California are inadequate. *AFTG-TG*, 689 F.3d at 1365 (affirming district court finding of no personal jurisdiction while noting that the lack of declarations refuting the defendants' assertions that their state contacts were sporadic).

### III. Discussion

Defendant MiFlex moves to dismiss for lack of either specific or general personal jurisdiction because it is not "at home" in this district and it has not engaged in a legally-cognizable patent-enforcement activity within this district. [Doc. No. 12-1 at 12-17.] In the alternative, MiFlex asserts that the Court does not have subject matter jurisdiction to grant declaratory relief because the products cited by Li Chung are not under threat of an infringement lawsuit. [*Id.* at 22-24.] Plaintiffs do not dispute that MiFlex lacks sufficient contacts with California to support general jurisdiction, but asserts that MiFlex has sufficient minimum contacts with this district to warrant maintaining the suit here. [Doc. No. 13 at 6-12.] Plaintiffs also address MiFlex's subject matter jurisdiction argument by countering that the hoses identified in the complaint are those previously accused of infringement. [*Id.* at 12-13.] Since Plaintiffs have effectively conceded that general

jurisdiction does not exist, the Court will limit its inquiry to whether it has specific personal jurisdiction over MiFlex.

### A. Specific Jurisdiction

Defendant MiFlex asserts that its patentee activities were not sufficient to give the Court personal jurisdiction over it in this declaratory judgment action.

"To establish specific jurisdiction, a plaintiff must demonstrate that 'the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Avocent*, 552 F.3d at 1330 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985) (internal quotations and citations omitted)). In order to determine whether specific personal jurisdiction satisfies due process in patent cases, the Federal Circuit has set forth a three part test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003). If Plaintiffs establish the first two prongs, "the burden of proof shifts to the defendant, which must 'present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.'" *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006); *Grober v. Mako Prods., Inc.,* 686 F.3d 1335, 1346 (Fed. Cir. 2012).

However, within the Federal Circuit "not all of a patentee's activities in the forum state are sufficient to create a basis for asserting personal jurisdiction." *Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785, 789 (Fed. Cir. 2011). Ordinary cease-and-desist notices sent by a patentee to an alleged infringer in a different state are not sufficient to subject the patentee to specific jurisdiction in that state, because a patentee must be afforded "sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355 (Fed. Cir. 1998). As a result, in a declaratory judgment action, the specific

personal jurisdiction analysis requires inquiry into "what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities.'" *Avocent,* 552 F.3d at 1332 (internal quotation marks and citation omitted.) Thus, "there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Avocent,* 552 F.3d at 1334 (quoting *Silent Drive*, 326 F.3d at 1202) (emphasis added in *Avocent*).

In *Breckenridge*, the Federal Circuit clarified what "other activities" in addition to cease and desist letters would suffice to meet the "relate to" requirement for specific personal jurisdiction.[1] 444 F.3d at 1363-1366. Examples of "other activities" include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent*, 552 F.3d at 1334-1335 (collecting cases). Essentially, "the crux of the due process inquiry should focus first on whether the defendant has had contact with the parties in the forum

---

[1] The Court summarized the holdings of its case law on the issue:
> where a defendant has sent cease and desist letters into a forum state that primarily involve a legal dispute unrelated to the patent at issue, such as an injunction obtained for misappropriation of trade secrets, the exercise of personal jurisdiction is improper. *Silent Drive*, 326 F.3d at 1202. Likewise, a defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there. *Hildebrand*, 279 F.3d at 1356. The same is true where the defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensees' sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income. *Red Wing Shoe*, 148 F.3d at 1357–58.
> In contrast, the defendant is subject to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum state licensee if the license agreement, for example, requires the defendant-licensor, and grants the licensee the right, to litigate infringement claims. *Akro*, 45 F.3d at 1546. Finally, the defendant will also be subject to personal jurisdiction in the forum state if the exclusive licensee (or licensee equivalent) with which it has established a relationship is not headquartered in the forum state, but nonetheless conducts business there. *Genetic Implant*, 123 F.3d at 1457–59.

*Breckenridge,* 444 F.3d at 1366.

state beyond the sending of the cease and desist letter or mere attempts to license the patent at issue there." *Breckenridge,* 444 F.3d at 1366. However, "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products – whether covered by the relevant patent(s) or not – do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim" and such sales "do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee." *Avocent*, 552 F.3d at 1336.

Here, Plaintiffs allege that this Court has specific personal jurisdiction over MiFlex because: (1) MiFlex sells scuba hoses in California through its North American Distributor, XS Scuba; (2) MiFlex directs recall and service issues to XS Scuba; (3) in 2013 MiFlex threatened Plaintiff Li Chung with suit under the '772 patent; (4) MiFlex also threatened a California based company Oceanic with infringement and met with the company in California in an attempt to resolve the dispute; (5) in 2017 MiFlex threatened Plaintiff H2Odyssey with infringement; and (6) Rock 'N Sports, a H2Odyssey customer based in Orange County, was also threatened with claims of infringement by MiFlex. [Doc. No. 13 at 5-12.]

In support of its motion to dismiss, MiFlex submitted a declaration from Defendant Mazzo. [Doc. No. 12-2] Mazzo attests that MiFlex has no offices, employees, or assets in California, nor anywhere else in the United States; does not have a registered agent or service of process within California; is not subject to and has never paid California taxes; does not manufacture any products in California; does not purchase any products from any California company or resident; and does not own, rent or use any real property in California. [*Id.* at ¶¶ 12, 18, 19, 20, 21, 22.] Mazzo also declares that, with the exception of the present lawsuit, MiFlex has never been sued or filed a lawsuit in California, and since the patent's issuance in 2013, has sent only eight cease and desist letters to five companies, two of which, Oceanic and Trident Diving Equipment, are based in California. [*Id.* at ¶¶ 15, 16, 34-36.] Further, Mazzo asserts that MiFlex has not advertised its products through media outlets in California or purchased/run advertisements specifically targeting

California residents; its website does not accept orders or otherwise sell any products; and it provides no services to send users in California who have purchased a MiFlex product via a third party. [*Id.* at ¶ 23, 31, 32.]

According to Mazzo, MiFlex sells some of its scuba hose products to one distributor, XS Scuba, and four original equipment manufacturers ("OEM"), that are located in California. [*Id.* at ¶ 25.] Mazzo attests that the products sold to all five California entities are "'FOB-Italy – that is, title on all Miflex 2 products purchased by XS Scuba or by the four OEMS . . . is transferred in Italy, before the products are shipped to California." [*Id.* at ¶ 26.] Regarding the five California entities, Mazzo also declares that MiFlex does not own or control any interest in them; MiFlex does not have any control over their marketing, sales plans, or channels of trade; MiFlex does not control or decide where or to whom they sell the MiFlex products once the products have been shipped from Italy. [*Id.* at ¶¶ 28-30.]

In response, Plaintiffs offer a declaration from Trevor Coddington and a number of accompanying exhibits. [Doc. No. 13-2.] The accompanying exhibits are: 1) a copy of an Important Notice issued by MiFlex in April 2012 that notifies MiFlex's worldwide customers of a precautionary recall of its Xtreme-hi HP hoses in the United States and Canada [*Id.* at 4, (Exhibit 1)]; a March 2008 press release from XS Scuba, posted on www.deeperblue.com, that confirmed MiFlex Hoses was launching their products in America "working with the established and successful company XS Scuba." [*Id.* at 6-7 (Exhibit 2)]; a posting on www.miflex.com's website regarding the degradation issues reported on Scubaboard forum that includes the closing statement "[w]e all at Miflex will continue with our effort to supply you with the best possible product, and regardless if the hose is made by us, we will analize [sic] any issue our customers will report us, trying to find the cause, and improve our products whenever possible. If you have any doubt or concern about your Miflex hose, please contact us immediately at: miflex@miflex.com." [*Id.* at 9-10 (Exhibit 3)]; excerpts from a 2017 XS Scuba catalogue that feature MiFlex scuba hoses, the pages of which contain a stamp "PATENTED DESIGN. TRUST THE ORIGINAL. TRUST THE BEST." [*Id.* at 12-14, (Exhibit 4)]; pages printed from

H2Odyssey's product pages www.h2odyssey.com/dive/pages/productpages/hoses that feature Rhino hoses [*Id.* at 16-18 (Exhibit 5)]; and a May 2017 email exchange between counsel regarding dismissal of Defendant Mazzo and whether absolute intervening rights apply to the '722 patent [*Id.* at 20-21, (Exhibit 6)]

In addressing the purposeful direction prong of the Federal Circuit's specific personal jurisdiction test, Plaintiffs assert that "there is no question that MiFlex has the required minimum contacts with California." [Doc. No. 13 at 7:8-9.] In support they point to the two cease and desist letters MiFlex sent to H2Odyssey[2] [Doc No. 1-7] and Rock 'N Sports, on February 6, 2017 and February 27, 2017, respectively. [Doc. No. 13 at 7-8.] Further, Plaintiffs cite to the two additional cease and desist letters MiFlex admits to sending to the California based companies, Trident Diving Equipment and Oceanic. But as MiFlex correctly point out, "Federal Circuit precedent is clear: An exercise of specific personal jurisdiction in a declaratory-judgment action over a patentee whose only patent-enforcement link to the forum is the writing of cease-and-desist letters does not comport with principles of fairness." [Doc. No. 14 at 4:9-12.] *See also Red Wing Shoe*, 148 F.3d at 1360-61 (holding "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patents rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.").

Plaintiffs also suggest the one visit made by Mazzo, MiFlex's Chief Executive Officer, to Oceanic's offices in California is pertinent to the minimum contacts analysis. [Doc. No. 13 at 8-9.] The Court does not agree and finds Plaintiffs attempt to analogize the circumstances of the case at bar to those before the Federal Circuit in *Xilinx Inc. v.*

---

[2] The cease and desist letter to H2Odyssey references the scuba hoses illustrated on page 8 of H2Odyssey's catalogue. [Doc. No. 1-7 at 2.]

*Papst Licensing GMBH & Co. KG,* 848 F.3d 1346 (Fed. Cir. 2017) erroneous. In *Xilinx*, the Federal Circuit exercised subject matter jurisdiction over a frequent patent-infringement suit filer who regularly traveled to the forum of accused infringers to hold extensive, in-person patent licensing negotiations before filing a suit. Here, Mazzo declared that "MiFlex 2 has held only one meeting in California. Several years ago I traveled to California as a tourist and, while there, met with a company called Oceanic, located in San Leandro, California." [Doc. No. 12-2 at ¶ 24.] There is no evidence that this meeting constituted negotiations to license the patent-in-suit or contrary evidence that disputes Mazzo's singular trip to California. Moreover, Mazzo attests that MiFlex has never filed a lawsuit in California and, with the exception of the present lawsuit, has never been sued in California. [*Id at ¶¶* 14, 15, 33.]

Similarly, Plaintiffs assertion that Defendants' commercialization activities should be considered as part of the Court's specific jurisdiction analysis is equally misplaced. Plaintiffs posit that "the accused scuba hoses are sold in direct competition with MiFlex's hoses that are distributed by MiFlex's self-described "North America Distributor" XS Scuba, which is located in California." [Doc. No. 13 at 8:26-28.] But, the Federal Circuit has explicitly held such commercialization activity is not the sort of "other activity" that will establish specific personal jurisdiction over a defendant patentee. *See, e.g., Avocent,* 552 F.3d at 1336 ("a defendant patentee's mere acts of making, using, offering to sell, or importing products . . . do not in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim."); *accord Autogenomics*, 566 F.3d at 1020 (Fed. Cir. 2009); *Radio Sys.* 638 F.3d 785, 790 (Fed. Cir. 2011). Therefore, any alleged contact MiFlex had related to the selling of its products is therefore immaterial to the Court's inquiry.

Further, Plaintiffs assert that Exhibits 3 and 4 provided additional evidence in support of their contention that MiFlex purposefully directed its activities in California and purposefully derived and invoked the benefits from its interstate activities in California. However, the Court has reviewed the documentary evidence and does not agree with

Plaintiffs' characterization of it. Mazzo's use of the word "distributor" does not establish any level of ownership and/or control or the existence of a licensing agreement between MiFlex and XS Scuba that would justify exercising personal jurisdiction over MiFlex. *Compare Red Wing Shoe*, 148 F.3d at 1357–58 (exercising personal jurisdiction against a defendant is not justified where the defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensees' sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income), *with Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (a defendant is subject to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum state licensee if the license agreement, for example, requires the defendant-licensor, and grants the licensee the right, to litigate infringement claims.). Nor does MiFlex's posting of a request for feedback regarding degradation of its product on its global website demonstrate that California or its residents were directly targeted by MiFlex.

As to the "arises out of prong" Plaintiffs summarily state that its declaratory judgment action of non-infringement action "certainly relates to these contacts" and that cease and desist letters "sent by the patentee defendant into the forum are relevant contacts in the personal jurisdiction analysis." [Doc. No. 13 at 9:14-17.] But, this general conclusion overlooks the second prongs requirement that "there must be 'other activities' directed at the forum and *related to the cause of action* besides the letters threatening an infringement suit." *Silent Drive,* 326 F.3d at 1202 (emphasis added). Thus, while this declaratory judgment action arises out of the cease and desist letters sent by MiFlex to businesses within California, including Plaintiff H2Odyssey, the letters alone do not meet the minimum contacts requirement. Furthermore, the Court does not find the "other activities" discussed above relate to the enforcement or the defense of the validity of the relevant patent that would justify the exercise of specific jurisdiction.

In sum, Plaintiffs point to no acts directed at this forum, outside of the four cease and desist letters sent to four California entities. But, under *Avocent,* without additional

11

3:17-cv-0556-CAB-WVG

enforcement activities, these communications cannot form the basis of specific personal jurisdiction. Because Plaintiffs cannot satisfy the first and second prongs of the due process test, they have not met their burden to show a prima facia case of specific personal jurisdiction.

## IV. Conclusion

For the reasons discussed above, MiFlex is not subject to personal jurisdiction in this Court.[3] Accordingly, it is hereby **ORDERED** that the Motion to Dismiss [Doc. No. 12] is **GRANTED,** and that Plaintiffs' claims against MiFlex are **DISMISSED**.

It is **SO ORDERED**.

Dated: August 17, 2017

Hon. Cathy Ann Bencivengo
United States District Judge

---

[3] Having determined that this Court lacks personal jurisdiction over MiFlex, the Court need not address MiFlex's argument that this Court does not have subject matter jurisdiction over this matter to grant declaratory relief.